## WILDHABER v. ZIMMERMANN.
### Patent Appeal No. 2866.

Court of Customs and Patent Appeals.
Feb. 8, 1932.

Bernard E. Shlesinger, of Rochester, N. Y., for appellant.

Elmer R. Helferich, of New York City (Nathan, Bowman & Helferich, Albert F. Nathan, and Border Bowman, all of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Certain claims of Wildhaber patent, No. 1,653,686, were copied into the application of Zimmermann and became the counts in the interference which was declared. The law examiner overruled a motion to dissolve which was made by Wildhaber.

The examiner of interferences, after the ruling of the law examiner, resumed proceedings in interference, and since the junior party, Wildhaber, took no testimony and "failed to make sufficient showing why judgment on the record should not be entered against him," granted priority of invention of the subject-matter of the counts to Zimmermann.

From the decision of the examiner of interferences, Wildhaber appealed to the Board of Appeals of the United States Patent Office, which affirmed the action of the examiner of interferences and approved the finding of the law examiner.

From the decision of the board, Wildhaber has appealed to this court.

The two counts in the interference are as follows:

"1. The method of cutting gears which consists in providing a tool, having a plurality of curved cutting edges arranged in a thread, at least one of which is so shaped as to finish the whole length of a tooth profile, and in rotating said tool in continuous engagement with a gear blank so that a plurality of its cutting edges pass through each tooth space of the blank in each revolution of the blank, while simultaneously imparting a relative feed movement between the tool and blank across the face of the blank.

"2. The method of cutting gears which consists in providing a tool having a plurality of cutting portions arranged in a thread, said cutting portions being provided with curved cutting edges, at least two of said cutting edges being so shaped as to finish the whole length of the profiles of the two sides of the teeth of the blank and in rotating said tool in continuous engagement with the blank so that a plurality of its cutting portions pass through a tooth space in each revolution of the blank, while simultaneously imparting a relative feed movement between the tool and blank across the face of the blank."

Concerning the subject-matter of the invention and the issue involved, the board said:

"The counts of the issue relate to a method of cutting gears by the hobbing process wherein the tool or hob and the blank to form the gear are rotated on their axes while a relative feed movement is imparted between the tool and the blank. The method of cutting gears by using a hob is old. The novel feature of the counts is the idea of using a tool at lease one of whose cutting edges is 'so shaped as to finish the whole length of a tooth profile.' On page 4 of his brief Wildhaber states that the only point at issue is whether 'Zimmermann uses a tool which has a cutting edge so shaped as to finish the whole length of a tooth profile.'

"Wildhaber discloses the invention applied to the production of a helical gear and shows a single cutting hob tooth for finishing the cut of a gear tooth profile. He shows other finishing teeth but they operate on other gear teeth profiles. The counts of the issue, however, are not limited to either of these features but are broad in character.

"Zimmermann illustrates the cutting of a worm gear. He shows four finishing teeth, F16, F17, F18 and F19, closely positioned and which pass successively through the same groove of the gear being cut.

"Wildhaber contends that each of Zimmermann's finishing teeth will cut a facet, that the profile of the gear blank will consist of a series of facets and that it will be impossible for any one of Zimmermann's cutting edges to finish the whole length of a tooth profile."

In the Wildhaber hob there is but one finishing tooth, as is shown by the drawings and by the physical exhibits in the case, while in the Zimmermann hob there are four finishing teeth.

It is the contention of Wildhaber that the four finishing teeth of Zimmermann make four cuts in finishing the whole of the tooth profile. Wildhaber says: "We have shown that Zimmermann states that his four identical finishing teeth are arranged in a true helical path and that, as is clear from the experience of men skilled in the art, it is impossible to arrange a number of identical finishing teeth in a helix without having each of these teeth cut a facet on the tooth profile and envelope the tooth profile shape by their composite action."

Zimmermann, in turn, contends in this court (and evidently made the same contention before the board) that only one of the four finishing teeth makes any cut, and that the other three, as long as the first finishing tooth retains its cutting edge, would make no cut whatever and would follow through the groove made by the first finishing tooth. From this standpoint, Zimmermann argues that he has a structure which reads upon the counts; that is to say, that in his structure one finishing tooth is capable of finishing the whole tooth profile.

This is the sole issue. If more than one of Zimmermann's finishing teeth actually cuts in the finishing process, then the interference should have been dissolved.

The examiner, when he declared the interference, evidently believed that for some reason Zimmermann could make the counts. The law examiner affirmatively so held and the board took the same position.

It seems that the board, in deciding that a single finishing tooth of Zimmermann might finish the entire profile, relied upon a statement which it quotes from the Zimmermann specification as follows: "Leaving the ultimate cuts to be made, as before, by the finally-acting undistorted tooth or teeth employed solely for finishing cuts as distinguished from roughing cuts."

After the board had rendered its decision, Wildhaber filed a very long and persuasive petition for rehearing in which he states he has clearly shown to the board that Zimmer-

mann's hob does not respond to the language of the counts. He submitted, in his petition for rehearing, drawings of the structures, and the petition recounts that he submitted an affidavit by Mr. Allen H. Candee, the holder of several patents on gear hobbing and the author of numerous treatises on this subject, which show that Zimmermann's hob having four finishing cutting teeth, formed the worm thread profile by a series or aggregation of cuts made by the four teeth.

In appellant's petition is found the following: "If the Board remains still unconvinced after consideration of this showing, we ask that this petition be considered a motion to restore jurisdiction to the Examiner of Interferences that an opportunity may be afforded Wildhaber to show by models, as well as sketches and drawings and the testimony of experts that the process illustrated in Zimmermann's drawings does not conform to the invention of this Interference. * * *"

The Board of Appeals, in overruling the motion and petition for a rehearing, stated:

"It is well settled that a party to an interference may not prosecute the interference to a final adverse decision on priority and then have the case remanded and reopened for the introduction of evidence except under extraordinary circumstances and in accordance with the rules governing the introduction of newly discovered evidence. This does not appear to be such a case and the evidence is not alleged to be newly discovered. * * *

"We are not satisfied that our decision is in error or that a different conclusion would result if a rehearing were granted."

No error is assigned by appellant on the action of the board in refusing to grant the motion and petition for rehearing or in refusing to consider the showing made in such petition. The affidavit referred to in the petition is not in the record before us.

The Board of Appeals, in its decision denying the motion and petition for rehearing, further said: "* * * Moreover, such evidence, if it established petitioner's contention that the various tribunals of this office are in error regarding the operation of a plurality of finishing teeth, would not be decisive of the case *since we have held that Zimmermann's specification discloses the use of either a single finishing 'tooth' or a plurality of finishing 'teeth.'*" (Italics ours.)

As we understand the contention of appellee in this court, it is to the effect that Zimmermann taught the use of more than one finishing tooth, but he contends that the first tooth would do all the finishing until it became dull, and that the other finishing teeth would merely follow through the space made by the first tooth and would not function until the first tooth had for some reason ceased to operate. We do not understand that appellee contends here that Zimmermann has disclosed the use of a single finishing tooth in any other way than is above indicated. This being true, it seems to us as we have hereinbefore stated, that the determination of the issue in the case here depends upon whether or not more than one of the Zimmermann finishing teeth actually cut in the finishing operation. If they do, Zimmermann did not disclose or teach that a single tooth could do the work of finishing.

The case was very earnestly and ably argued in this court, and much time was devoted to explaining special drawings emphasizing the operation not only of the devices in controversy but other related ones as well. Appellant's counsel, in great detail, pointed out and demonstrated that the four cutting teeth of Zimmermann could operate in no other way than for each to take out a small portion of the metal when it revolved.

Appellee's counsel here conceded that this was the issue, and reiterated the statement that the first finishing tooth would do the finishing and that the other three would follow through and take no cut as long as the first finishing tooth maintained its cutting edge. The statement carries with it no convincing force. It was not persuasive when made and is no more so now, after much consideration of it. It is merely the assertion of a claimed fact not supported by any convincing proof or argument. Certainly appellee's counsel pointed out nothing in the nature or arrangement of these teeth that would cause them to so perform. It seems to us that appellee's statement of the manner of the operation of the teeth is fundamentally wrong. We cannot see how it would be possible to use a hob having four identical teeth arranged in the same thread and rotating in engagement with a rotating gear blank, having the feed movement it is conceded to have, without each of the teeth performing part of the function of making the finishing cuts, and it would furthermore seem to us that the tooth profile, thus produced, would result from the successive finishing cuts of all the finishing teeth of the tool. We think the fundamental character of the device requires that it so perform and that it is on account of this fact that appellee's counsel was unable to convincingly

explain how and why it would otherwise perform.

With the board's conclusion that Zimmermann taught the use of but one tooth (which is the teaching of Wildhaber) we must disagree. We do not think the quoted portion of the Zimmermann specification means to suggest that one tooth could completely finish the profile. He does point out that a "tooth" takes a cut in finishing, but this is not saying that this tooth completely finished it or that no other tooth performed part of the finishing cutting operation. If Zimmermann intended to have one active finishing tooth and three dormant accessory finishing teeth, which latter teeth merely followed through and were only to perform a function when the first one failed, and if they were so provided for the purpose of extending the life of the hob, it seems strange that he would not have so explained it in his specification. It seems unlikely that he would have shown these teeth in the drawing and referred to them in the specification without pointing out this new and unusual feature. Furthermore, the discussion of the operation of his device as a whole in his specification leads us to the conclusion that he at no time intended to teach the use of a single tooth for making all the cuts required for finishing the profile. In Zimmermann's specification he says: "The last four teeth F19, F18, F17, F16, (the ones last acting to cut) need no deformation but may be preserved intact in the hob and used as finishing teeth."

Appellant has pointed out that if Zimmermann had meant by the phrase quoted by the board, and set out earlier herein, that he might only use one "tooth," in his hob and shape it so that it would finish the whole length of the tooth profile, he would have used the phrase "cut or cuts" in each instance where he used the word "cuts" so as to give the meaning contended for of his phrase "tooth or teeth." This seems plausible to us, and especially in view of Zimmermann's use of the word "tooth" in other portions of his specification.

In the decision of this case we have not found it necessary to refer to the prior art as shown by several patents contained in the record.

We conclude that the board erred in affirming the action of the examiner of interferences in awarding priority of the counts in issue to the appellee herein. The interference should have been dissolved. The decision of the Board of Appeals is reversed.

Reversed.